# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 91 C 2796 | **DATE** | 6/7/2000 |
| **CASE TITLE** | United States vs. Rand Motors, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants; Petition for Interest Due

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' petition for interest due [172-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| X | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 0 7 2000 | |
| | Notified counsel by telephone. | | date docketed | 179 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 91 C 2796 |
| v. ) | |
| ) | Judge George W. Lindberg |
| RAND MOTORS, et al., ) | |
| ) | |
| Defendants. ) | |

**DOCKETED JUN 0 7 2000**

## MEMORANDUM OPINION AND ORDER

The United States commenced a forfeiture action against Rand Motors and all of its assets at the inception of this case nearly a decade ago. The underlying facts giving rise to that forfeiture action are as follows.

On May 8, 1991, the United States filed a verified complaint for forfeiture against Rand Motors and all of its assets. It was determined that there was probable cause to believe that Rand Motors was involved in money laundering, and therefore its assets were subject to forfeiture. *See* 18 U.S.C. § 981. Warrants of seizure and monition were issued based upon the finding of probable cause.

The next day, the United States Marshal seized defendant properties pursuant to the warrants. Several used motor vehicles were seized and later sold by the government for approximately $62,475. During the execution of these warrants, law enforcement officers also executed a search warrant at the residence of Sherwin Yellen. Officers searching Yellen's residence discovered several keys to safe deposit boxes, financial records, and $64,256 in United States currency.

Additional seizure warrants were subsequently obtained to seize assets held in defendant brokerage accounts and in safe deposit boxes. Execution of these warrants resulted in the seizure of approximately $442,917.91 in United States currency. In sum, approximately $570,000 in United States currency was ultimately seized and held by the United States. The parties do not dispute the amount of currency and other properties actually seized.

In October 1996, the parties settled the forfeiture proceeding and entered a settlement stipulation and hold harmless agreement ("agreement"), which recited the above-stated facts and sums of currency. The terms of the agreement provided that "(i)t is agreed by the United States and claimants that in settlement of this action, the sum of $250,000 shall be paid to the United States from assets seized. These funds shall be forfeited by the United States and disposed of according to law by the United States Marshal." The agreement also provided that:

> Upon receipt of the funds in settlement of this matter, the United States agrees that all property seized pursuant to warrants of seizure and monition shall be released 'where is and as is' to claimants. The United States agrees to assume responsibility for resolving an outstanding water bill for the defendant real estate located at 801 South Western.
>
> Claimants Sherwin Yellen, Babette Yellen, and Martin Yellen, warrant that they have exclusive right and title to the seized property and on behalf of themselves and the other claimants, and hereby release, hold harmless and forever discharge the United States, its officers, agents, servants, and employees, its heirs, successors, or assigns from any and all actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and/or demands whatsoever in law or equity which the claimants, their heirs, successors, or assigns ever had, now have or may have in the future in connection with the investigation, seizure, detention, and release of the defendant property belonging to Rand Motors, Sherwin Yellen, Babette Yellen, and Martin Yellen, including the real estate located at 801 South Western.

This court dismissed the forfeiture action in light of the parties' settlement on October 10, 1996, but retained jurisdiction to enforce the terms of the agreement. The government returned

2

$382,524.95 to claimants in February 1997. This amount represented the seized funds and funds from the sale of the seized automobiles but did not include any payment of interest earned while the funds were in interest-bearing bank accounts. The agreement fails to address the distribution of interest earned on the seized funds while they were in the possession of the United States. In approximately June 1998, claimants' counsel sent a letter to the government regarding the payment of interest on the seized funds. The government responded that although it didn't "dispute the legal support for [claimants'] position . . . we are operating under a settlement agreement that specifically set forth the terms under which the matter was resolved without mention of any interest due." Now, more than three years after the case was dismissed, the terms of the agreement have come into dispute.

Rand, Sherwin Yellen, Bebette Yellen, and Martin Yellen (hereinafter "claimants"), all named defendants in the underlying forfeiture action, urge the court to order the United States to disgorge any actual or constructive interest that the government earned on that portion of the seized funds that was not ultimately forfeited. Claimants rest their petition on the language of the settlement agreement itself as well as on Ninth Circuit and Sixth Circuit decisions in support of the proposition that the United States must disgorge actual or constructive interest earned on funds seized but ultimately not forfeited. *See U.S. v. $277,000 U.S. Currency*, 69 F.3d 1491 (9th Cir. 1995); *U.S. v. $515,060.42 U.S. Currency*, 152 F.3d 491 (6th Cir. 1998).

In *U.S. v. $277,000 U.S. Currency*, local police seized, inter alia, $277,000 in cash, which they turned over to the United States government. *See $277,000 U.S. Currency*, 69 F.3d at 1492. The United States sought forfeiture of the seized property, but the district court suppressed the evidence supporting the government's forfeiture claim and ordered the money returned,

3

"including interest thereon as provided by law from the date of seizure." *Id.* The government opposed the payment of interest, claiming that no statutory authority existed for such payment and that the government had not waived sovereign immunity to an award of prejudgment interest.

On review, the Ninth Circuit affirmed the award of interest earned on the seized funds, holding that although sovereign immunity did generally bar the recovery of prejudgment interest, "the government is not always free to profit from wrongly seized property without recourse by the owner." *Id.* at 1493. The interest that the government earned while it held the funds "bec[a]me part of the res, to be returned with the res to the claimant." *Id.* at 1496. Thus, the Ninth Circuit decision mandates that when the United States seizes property, but is ultimately found to have no proper claim to the property in a forfeiture action, sovereign immunity does not protect it from being required to pay actual or constructive interest earned on the seized funds. *Id.* Approximately three years later, the Sixth Circuit adopted the Ninth Circuit's rationale and awarded interest to a claimant whose property the United States seized but which was ultimately returned to claimant because the forfeiture claim was barred by the statute of limitations. *See U.S. v. $515,060.42 U.S. Currency*, 152 F.3d at 504-06.[1]

Not all circuits have agreed with the reasoning articulated in these two cases. In *U.S. v. $7,999 U.S. Currency*, the claimant in a civil forfeiture case had appealed the district court's denial of prejudgment interest after it had granted summary judgment to the claimant because the

---

[1] The Sixth Circuit referred to the fact that the Honorable Danny J. Boggs, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, authored the Ninth Circuit decision while sitting by designation. *Id.* at 170 F.3d at 505, fn. 11

4

government's delay in filing the action violated the claimant's due process rights. 170 F.3d 843, 845 (8th Cir. 1999). The Eighth Circuit held that without statutory authority or an express waiver of sovereign immunity, prejudgment interest could not be awarded. It noted that "(w)hen the government has unsuccessfully sought to forfeit previously seized property under 21 U.S.C. § 881(a)(6), no statute expressly authorizes the payment of prejudgment interest to the successful claimant." *Id.* at 844-45. The statute did provide for an award of costs to claimants in such a circumstance but such a provision "'does not provide the clear affirmative intent of Congress to waive the sovereign's immunity' from an award of interest." *Id.* at 845 (citations omitted). In rejecting the reasoning of the Ninth and Sixth Circuits on this issue, the Eighth Circuit held that "(s)overeign immunity does not depend upon whether the government benefited from its conduct in question." *Id.* Recharacterizing the relief sought as "constructive interest" did not alter the fact that the claimant was actually seeking prejudgment interest. *Id.*

In any event, the decisions of the Ninth and Sixth Circuits are not particularly applicable to the case at bar. In both *$277,000 U.S. Currency* and *$515,060.42 U.S. Currency*, claimants received interest on seized funds only after the court ruled that the United States had no proper claim to the seized property. *See $515,060.42 U.S. Currency*, 152 F.3d at 504; *$277,000 U.S. Currency*, 69 F.3d at 1492. Neither case involved a signed, negotiated agreement between the parties to resolve the forfeiture dispute and where the court made no finding of government delay or failure to establish the forfeiture claim.

Nor has the Seventh Circuit addressed the issue of whether the interest on seized currency attaches to the res or simply constitutes prejudgment interest, the award of which is barred by sovereign immunity. The court finds, however, that considering the parties' settlement

5

agreement, it does not have to determine whether the Seventh Circuit would apply the reasoning of the Sixth and Ninth Circuits, the Eight Circuit, or some variation thereof. The question for the court is whether the settlement agreement contemplated awarding interest to either party in light of the state of the law at the time the parties signed the agreement. Therefore, the court turns to a discussion of that agreement.

Although the settlement agreement does not specifically address the issue of interest allocation, both parties point to its language as support for their respective positions. Claimants contend that the language of Paragraph 5 of the agreement that "$250,000 shall be paid to the United States from the assets seized," requires the government to disgorge interest it earned on the non-forfeited seized funds because it identifies a specific amount that the United States was to receive from the total of the seized funds. Additionally, claimants contend that the correspondence between the government and claimants' counsel indicates that the government did not initially dispute that claimants were entitled under the law to interest on the seized funds.

Pointing to the contract language that "(u)pon receipt of the funds in settlement of this matter, the United States agrees that all property seized pursuant to warrants of seizure and monition shall be released 'where is and as is,'" the government argues that there is no way to interpret that sentence as requiring the payment of interest.

Of course, returning all seized property "where is and as is" could be interpreted as requiring the government to return to claimants the bank account in which the seized currency was placed along with any interest therein. This interpretation, however, requires assumptions that are not included in the plain language of the contract. The court is not convinced that the agreement language addressing the payment of $250,000 to the United States or the language

6

regarding the return of property "where is and as is" can lead to the conclusion that the parties actually contracted for the payment of the interest to the claimants. The fact that the agreement identifies a specific amount to be paid to the United States is not dispositive of the issue of interest allocation because the terms of the agreement merely indicate that the $250,000 was to be paid *"from the assets seized."* Such a statement cannot be construed as binding the United States to disgorge all interest earned on the seized funds. The contract does not say that the United States will be paid "from the assets seized and interest earned thereon." The dollar amounts listed in the agreement do not include any additional interest and refer only to the seized amounts. The agreement is simply devoid of any mention of which party would retain the interest earned on the seized assets. If the United States and claimants had agreed that the government was to disgorge all interest earned on non-forfeited seized funds, certainly claimants' counsel would have ensured that such an important point was explicitly stated in the final draft of the settlement agreement. This is especially true in light of the fact that in September or October 1996, the only case supporting the payment of prejudgment interest in a forfeiture case was the Ninth Circuit decision in *U.S. v. $277,000 U.S. Currency.* That is hardly enough to persuade the court that the parties agreed that the government would turn over the interest earned on the seized funds.

The court concludes that the parties simply did not address the issue of interest in their settlement agreement, possibly because so little law existed at the time that would lead the parties to conclude that interest would be paid to the claimants in such a case. Because the United States had control of the bank accounts–and therefore the interest earned–the court concludes that the parties' agreement did not result in any obligation on the part of the

7

government to release any interest earned on the seized funds. The agreement language stating that claimants "release, hold harmless and forever discharge the United States" from future suits or causes of action concerning the seized property bars claimants from pursuing interest on the returned funds at this late date. For these reasons, the court denies claimants' petition for interest.

**ORDERED:** Claimants' petition for interest is denied.

**ENTER:**

George W. Lindberg
United States District Judge

DATED: JUN - 7 2000